IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 2, 2014 Session

# BRENDA Y. HANNAH v. SHERWOOD FOREST RENTALS, LLC, ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 2011-0600-IV     O. Duane Slone, Judge**

_____

### No. E2014-00082-COA-R3-CV-FILED-NOVEMBER 17, 2014

_____

This appeal results from the grant of summary judgment to the defendants in a premises liability action. The plaintiff fell while descending a set of wooden stairs leading to a rental cabin. The plaintiff filed the instant action against the owners of the cabin and the rental company, which manages and maintains the cabin. In granting summary judgment to the defendants, the trial court determined that there were no genuine issues of material fact by which a reasonable jury could find that either defendant had actual or constructive notice of any allegedly defective condition existing that caused or contributed to the plaintiff's fall. The plaintiff has appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Brenda Y. Hannah.

Kenneth W. Ward, Knoxville, Tennessee, for the appellees, Sherwood Forest Rentals, LLC d/b/a Sherwood Forest Resort; Mary Ruth Hovell; and Charles M. Hovell.

## OPINION

The plaintiff, Brenda Y. Hannah, lodged at a cabin managed by the defendant, Sherwood Forest Rentals, LLC ("Sherwood"), for a pre-wedding event for Ms. Hannah's daughter on October 9, 2010. This cabin was owned by Charles and Mary Ruth Hovell but managed and maintained by Sherwood. A lengthy set of stairs served as the only means of ingress and egress for the cabin. Ms. Hannah's daughters and niece arrived at the cabin on

October 8, 2010, experiencing no problems with the stairs. Ms. Hannah and her sister arrived at the cabin after dark on October 9, 2010, and ascended the stairs to enter the cabin with no difficulty. When Ms. Hannah and her sister returned to the car to retrieve their belongings and were in the process of descending the stairs, Ms. Hannah sustained a fall. Ms. Hannah stated that she reached a step below halfway down and "it was like the bottom fell out." According to Ms. Hannah, it felt as though "there was nothing there all of a sudden."

Ms. Hannah suffered injuries to both feet and ankles and was unable to walk. Family members joined to carry her into the cabin. The next morning, the family inspected the stairs and discovered a few steps that allegedly had improperly seated nails fastening the top of the step. The family also discovered that one of these steps allegedly "flipped" or "rocked" forward when stepped on in a certain spot, due to missing or improperly seated nails. Ms. Hannah's daughter and sister described having observed the step move up and down. According to Ms. Hannah's sister, at least three steps manifested nails protruding two to two and one-half inches from the top of the step. Photographs of the steps taken at the time and showing protruding nails were subsequently made exhibits in the trial court record.

Ms. Hannah's sister reported the condition of the stairs to Sherwood the morning after the accident. Sherwood's manager, Susan Bailey, visited the cabin before Ms. Hannah's departure that morning and prepared a report. Ms. Bailey allegedly informed Ms. Hannah and her family that she would have maintenance repair the steps. Ms. Hannah proceeded to the hospital and was diagnosed with a fracture requiring surgery in her right foot. In addition, Ms. Hannah's left ankle was severely sprained.

Ms. Hannah filed the instant action on September 8, 2011, against Sherwood and the Hovells.[1] The defendants subsequently filed a motion for summary judgment, asserting that Ms. Hannah could not prove that a dangerous condition existed at the time of the injury or that they had notice of such a condition if it did exist. In support of the motion, the defendants filed an affidavit by Ms. Bailey, stating that she had inspected the steps on October 10, 2010, and found nothing wrong. Ms. Bailey also stated that there had been no prior or subsequent reports of any problems with the stairs. According to Ms. Bailey's affidavit, when the cabin was cleaned by Sherwood's housekeeping staff prior to the Hannah family checking in, no one identified any problem with the stairs. She noted that the housekeeping staff is trained to identify and report any such maintenance concerns. Ms. Bailey also reported that Sherwood's maintenance staff had inspected the cabin at least once per month prior to the injury and that no problem had been detected.

---

[1]Ms. Hannah also filed suit against Jeffrey McLeod and Laura Lytle McLeod because they had purchased the cabin from the Hovells after October 9, 2010. The McLeods were dismissed from the lawsuit and are not parties to this appeal.

Mr. and Ms. Hovell likewise filed affidavits stating that there had been no problem with the stairs noted prior to Ms. Hannah's fall. The Hovells added that they likewise had found no problems during their periodic visits to and inspections of the cabin.

The trial court conducted a hearing on the summary judgment motion on November 22, 2013, and granted judgment to the defendants. The trial court found that there were no genuine issues of material fact by which a reasonable jury could find that either Sherwood or the Hovells had actual or constructive notice of any allegedly defective condition existing that caused or contributed to Ms. Hannah's fall. Ms. Hannah has appealed.

## II. Issue Presented

Ms. Hannah's brief does not contain a statement of the issues as required by Tennessee Rule of Appellate Procedure 27. As this Court stated in *Word v. Word*, 937 S.W.2d 931, 932-33 n.1 (Tenn. Ct. App. 1996), although such a deficiency constitutes a "serious violation[] of the Rules of Appellate Procedure," this Court has the discretion to consider the matters raised by Ms. Hannah in her brief if it chooses to do so. Accordingly, we will, in our discretion, consider Ms. Hannah's argument that the trial court erred in granting summary judgment to the defendants.

## III. Summary Judgment Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2013) applies. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011). The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1)     Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2)     Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.[2]

As our Supreme Court has explained:

The standards by which appellate courts customarily review decisions to grant or deny motions for summary judgment are well-known by the bench and bar. Summary judgments are appropriate in virtually every civil case that can be resolved on the basis of legal issues alone. They are not appropriate when genuine disputes regarding material facts exist. Accordingly, a summary judgment is appropriate only when the undisputed facts, and the inferences in the non-moving party's favor reasonably drawn from these facts, require granting a judgment as a matter of law to the party seeking the summary judgment.

Orders granting a summary judgment are not entitled to a presumption of correctness on appeal. Thus, appellate courts reviewing an order granting a summary judgment must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. The reviewing court must consider the evidence in the light most favorable to the non-moving party and must resolve all reasonable inferences in the non-moving party's favor.

*B & B Enter. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 844-45 (Tenn. 2010) (internal citations omitted).

---

[2]As this Court has explained:

Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan* [*v. Alltell Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)], which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

*Walker v. Bradley County Gov't*, No. E2013-01053-COA-R3-CV, 2014 WL 1493193 at *3 n.3 (Tenn. Ct. App. Apr. 15, 2014). *See also Sykes*, 343 S.W.3d at 25 n.2.

## IV. Premises Liability

Ms. Hannah concedes that a party seeking recovery under a theory of premises liability must establish the elements of negligence, including:

1.    A duty of care owed by the defendants to the plaintiff;

2.    Conduct by the defendants falling below the standard of care amounting to a breach of that duty;

3.    An injury or loss;

4.    Causation in fact; and

5.    Proximate or legal cause.

*See Rice v. Sabir,* 979 S.W.2d 305, 308 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). As our Supreme Court has explained:

> In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *See Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996); *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994). Although the traditional rationale for imposing this duty was the owner's superior knowledge of conditions on the premises, *see e.g., Kendall Oil v. Payne*, 41 Tenn. App. 201, 293 S.W.2d 40, 42 (Tenn. App. 1955), we recently held that a duty may exist even where the injury-causing condition is alleged to be "open and obvious" to the plaintiff. We explained:
>
>> That a danger to the plaintiff was 'open or obvious' does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. The factors provided in the Restatement (Second) of Torts, § 343(A) relate directly to the foreseeability question; in short, if the foreseeability and gravity of harm posed from a defendant's

conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Coln v. City of Savannah*, 966 S.W.2d 34, 43 (Tenn.1998).[3]

The duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." Prosser and Keeton on Torts, supra, § 61 at 426. In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Id.* at 426-27. As we explained in *Doe v. Linder Const. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992):

> Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. '[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.'

(emphasis added) (citations omitted).

*Rice*, 979 S.W.2d at 308-09.

In this case, Ms. Hannah argues that she provided testimony and photographic evidence of the existence of a dangerous condition with regard to the stairs. The defendants posit, however, that they countered this evidence with proof that they had no knowledge of any defect in the stairs. Ms. Bailey's affidavit establishes that the cabin was rented to a third party before the accident as recently as October 3, 2010, and no problems were experienced. Further, Sherwood's housekeeping staff cleaned the property and noted no dangerous or defective condition before Ms. Hannah and her family checked in. Likewise, the

---

[3]We note that Coln was overruled on other grounds by *Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000).

maintenance staff did not notice any problematic condition during their periodic inspections. No other falls or incidents were reported prior or subsequent to Ms. Hannah's fall.

As our Supreme Court has further explained:

> Business proprietors are not insurers of their patrons' safety. However, they are required to use due care under all the circumstances. *Martin v. Washmaster Auto Ctr., U.S.A*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). "Liability in premises liability cases stems from superior knowledge of the condition of the premises." *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Martin v. Washmaster Auto Center, U.S.A*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996) (citing *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. App. 1995); *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. App. 1980)). We have previously held that constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition. *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986).

*Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). This Court has also held that in addition to considering the length of time the condition existed, the trial court should also consider "the nature of the business, its size, the number of patrons, the nature of the danger, its location along with the foreseeable consequences." *See Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). Indeed, "[t]he key to premises liability is foreseeability." *See Rogers ex rel. Wright v. Autozone Stores, Inc.*, No. M2011-02606-COA-R3-CV, 2012 WL 3594342 at *6 (Tenn. Ct. App. Aug. 21, 2012). "For a plaintiff to prevail in a premises liability case, he or she must prove that 'the injury was a reasonably foreseeable probability and that some action within the defendant's power more probably than not would have prevented the injury.'" *Id.* (quoting *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999)).

Assuming, *arguendo*, that a dangerous condition existed with regard to the stairs, Ms. Hannah presented no proof that the condition was caused or created by either Sherwood or the Hovells. Therefore, Ms. Hannah would be required to show that Sherwood or the

Hovells had actual or constructive notice that the dangerous condition existed prior to her fall. *See Blair*, 130 S.W.3d at 764. Ms. Hannah did not demonstrate actual notice as there was no proof that there had been any prior incidents or complaints regarding the condition of the stairs. Therefore, Ms. Hannah would be required to prove constructive notice by establishing that the condition existed for such a length of time or was of such a nature that Sherwood or the Hovells, in the exercise of reasonable care, should have become aware of it. *Id.; see also Paradiso*, 499 S.W.2d at 79.

As defendants point out, Ms. Hannah's family stayed at the cabin for twenty-four hours before her arrival and did not observe any problem with the stairs, despite having traversed the stairs multiple times. Ms. Hannah likewise testified that she saw nothing wrong with the stairs before she fell. There were no prior reports of any issue with these stairs from other invitees or from the housekeeping or maintenance staff of Sherwood. Therefore, defendants assert that this was, at most, a latent dangerous condition of which they had no actual or constructive knowledge. Having carefully reviewed the record, we agree.

This case is similar to *Paradiso*, 499 S.W.2d at 79, wherein the plaintiff fell inside a store after scraping her leg on a piece of metal projecting from the bottom of a display rack. Upon later inspection, a nail was discovered on the floor near the rack, which had come loose from the molding, allowing the molding to project four or five inches into the checkout lane. *Id.* The plaintiff filed a premises liability action, and the trial court entered a directed verdict for the defendant store. *Id.* This Court affirmed that ruling, stating:

> In this case we have absolutely no proof as to what caused the protruding metal to come loose from the display rack nor is there any proof as to when the metal came loose or the length of time it had been protruding.

> In this case when the evidence is reviewed in the light most favorable to the plaintiff, we find no proof from which it can be logically inferred the defendant Kroger breached its duty and obligation to plaintiff of using ordinary care to maintain the premises in a reasonably safe condition. To establish constructive notice requires some material competent evidence from which it can be logically inferred the proprietor, by the exercise of ordinary care, would have or should have discovered the dangerous condition.

> Here there is absolutely no proof as to the condition of the display rack prior to the molding coming loose. Neither is there proof as to how or when the molding came loose or what length of time and under what circumstances the defective condition existed. In the absence of evidence on those vital elements any conclusion of the trier of fact would have to be based on conjecture and

speculation which would violate the cardinal rule that such conclusion must be supported by evidence.

Therefore, since there is no evidence to support a conclusion the defendant knew or should have known of the defective condition of the rack, we sustain the trial judge's action of directing a verdict.

*Paradiso*, 499 S.W.2d at 80 (internal citations omitted).

Also factually on point is the case of *Rogers ex rel. Wright*, 2012 WL 3594342 at *6. In *Rogers*, the plaintiff entered an Autozone store on a rainy day, made a purchase, borrowed a funnel from the sales clerk, and left the store. *Id.* The plaintiff used the funnel and then re-entered the store to return the item to the clerk. *Id.* Upon leaving the counter and walking toward the exit, the plaintiff slipped in a puddle of water and fell, injuring herself. *Id.* The plaintiff filed a premises liability action against the store regarding her injuries. *Id.*

The *Rogers* trial court granted summary judgment to the defendant store, and this Court affirmed that ruling. *Id.* As this Court explained:

In viewing this case in the light most favorable to Ms. Wright, we can find no proof in the record that could potentially establish that Autozone had constructive knowledge of the puddle that caused Ms. Wright to fall. Even taking into consideration the fact that the puddle was the size of a plant pot and that the employee could have seen the puddle from the counter, we do not believe that there is any evidence to infer that Autozone should have discovered the puddle's existence when Ms. Wright was the only person in the front of the store during the 15 to 20 minutes prior to the fall. While the employees were not tasked with patrolling the store for spills at set times, they had been instructed to clean any spills that they encountered. We do not believe that a lapse of approximately 20 minutes between general inspections was unreasonable when, according to Ms. Palmore, there was only one customer in the front of the store during that time period. Additionally, we cannot say that an employee would have discovered the puddle when Ms. Wright, who admitted that she was only a few steps away from the puddle when she first left the store, did not even notice the puddle in her successive trips in and out of the store. Without any additional evidence regarding the source of the puddle or the actual length of time that the puddle was present, we hold that there was not any material evidence from which the trier of fact could infer that the dangerous condition existed for such a length of time that one exercising reasonable care would have discovered it. Accordingly, we

conclude that the trial court did not err in granting the motion for summary judgment.

*Rogers ex rel. Wright,* 2012 WL 3594342 at \*7.

Similarly, here, Ms. Hannah produced no evidence to show that Sherwood or the Hovells should have discovered this stairway condition. There was no evidence to demonstrate how long the condition had existed or what caused it. No prior invitees upon the premises had noted a problem, including Ms. Hannah's family. The Sherwood housekeeping staff had regularly and recently cleaned the cabin, discovering no problem with the condition of the stairs. The Sherwood maintenance staff had regularly inspected the cabin and noted no issues. Further, Ms. Hannah herself had once traversed the stairs, encountering no difficulty. Considering these facts, we conclude that the trial court did not err in granting summary judgment to the defendants, based on the lack of material evidence from which a trier of fact could conclude that the defendants should have, in the exercise of reasonable care, discovered this condition. We therefore affirm the trial court's grant of summary judgment to the defendants.

## V. Conclusion

For the reasons stated above, we affirm the judgment of the trial court. Costs on appeal are taxed to the appellant, Brenda Y. Hannah. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE